LEIGHTON WILLIAMS, as Receiver of the BLAIR IRON AND STEEL COMPANY, Appellant, v. CHRISTOPHER MEYER, Respondent.

*Subscriptions to the stock of a corporation — when future installments are due at the time of the subscription within the purview of the statute of limitations.*

Between January 20 and May 15, 1873, the defendant signed a paper by which he agreed to subscribe for 600 shares of the Blair Iron and Steel Company, to be paid for according to the terms set forth in the same paper, which stated that the whole of the capital stock had been issued and paid for by the transfer of patents; that 9,000 shares of the stock were to be used as a working capital for the company, subject to the order of the board of trustees, except $50,000 of the proceeds which were to be first paid to the signors, who were persons interested in the enterprise; that 6,000 shares were to be sold " for the purpose of raising the present working capital and paying the said fifty thousand dollars, the minimum price to be fifty dollars per share," to be paid as follows: " One-third part thereof as soon as the whole six thousand shares shall be subscribed for, and the remainder in such installments as the board of trustees may call for the same for the purposes of the business, the certificates to be delivered when the whole shall be paid." The defendant having paid thirty-three and one-third per cent of the amount due for the stock subscribed for by him, this action was commenced on October 14, 1879, to recover the remainder.

*Held,* that all the installments became due and payable as soon as the subscription took effect, and that the action was barred by the statute of limitations because not brought within six years from that time.

*Howland* v. *Edmonds* (24 N. Y., 307); *Tuckerman* v. *Brown* (33 id., 297); *Lake Ontario, etc., Railroad Company* v. *Mason* (16 id., 451); *Goshen Turnpike Company* v. *Hurtin* (9 Johns., 217) followed.

Appeal from a judgment, entered by direction of the justice upon a trial at Special Term, dismissing the complaint.

*James Watson,* for the appellant.

*W. H. Williams,* for the respondent.

Macomber, J. :

Between January 20, 1873, and May 15, 1873, the defendant subscribed for 600 shares of the stock of the Blair Iron and Steel Company, a corporation organized under the general act of 1848, of which the present plaintiff is the receiver. The action was begun by the company itself October 14, 1879. At the time of the subscription to the stock, the defendant paid thirty-three and one-third per cent

of the amount subscribed, and has paid no other sum. The defense interposed and relied upon, and upon which the complaint was dismissed, is that the action was not brought within six years from the time that it accrued. The sufficiency of this defense is to be determined by the nature and terms of the contract. For, if the right of action accrued to the company at the time of the making of the subscription, it is quite clear that the statute has now run against the claim, and no action therefor can be maintained. The substance of the papers upon which the liability of the defendant is sought to be made is a statement of certain persons in writing to the effect that the capital stock of the company was 25,000 shares of $100 each, making in all $2,500,000; that it had already been paid up by the transfer of patents; that 9,000 shares of the stock was to be used as working capital for the company, "subject to the order of the board of trustees of said company, excepting fifty thousand dollars of the proceeds thereof first to be paid to us from said proceeds, the trustees have, with our consent, ordered a sale of six thousand of said shares for the purpose of raising the present working capital and paying the said fifty thousand dollars, the minimum price to be fifty dollars per share, and said trustee, with the approbation of the board of trustees, now offers said six thousand shares at said minimum price of fifty dollars a share, to be paid for as follows: One-third part thereof as soon as the whole six thousand shares shall be subscribed for, and the remainder in such installments as the board of trustees may call for the same for the purposes of the business, the certificates to be delivered when the whole shall be paid." This proposition was signed by certain persons interested in the enterprise. The paper which the defendant signed is as follows: " We, the undersigned, hereby subscribe to the number of shares, of the above six thousand shares, set opposite to our names respectively, to be paid for according to the terms above set forth, but this subscription not to be binding until the whole six thousand shares shall have been reliably subscribed."

The amount which the defendant subscribed for was $30,000, one-third of which, as has already been stated, was paid in by him on or about May 15, 1873. It was competent for the defendant to enter into a contract by which he could be called upon to pay, not

at the time of making the subscription, but at future periods, continuing for more than six years from the time the original contract was made. The general rule is well settled in this State that in the absence of a contract thus to make the payments in future installments which shall not become, by the terms of the contract, due and payable until some future time, subscriptions become due and payable at once, and no call or demand before action therefor is necessary. (*Howland* v. *Edmonds*, 24 N. Y., 307; *Tuckerman* v. *Brown*, 33 id., 297; *Lake Ontario, etc., R. R. Co.* v. *Mason*, 16 id., 451.)

The question is whether there is anything in the language of this contract that takes the case out of this general rule. The learned counsel for the plaintiff contends that the expression "one-third thereof as soon as the whole six thousand shares shall be subscribed for, and the remainder in such installments as the board of trustees may call for the same, for the purpose of the business," makes it a contract to become due and payable in future installments, and that by implication at least, if not by positive language, the trustees had no right to call for the same except for the purposes of the business and as the exigencies of the business would warrant. This, in our judgment, is not tenable. The sum required was for a "working capital for the company," and it was subscribed for solely for the purpose of obtaining a present working capital, so that if the company was to operate at all in its enterprise, and, if we are to resort to inferences and deductions, it would seem that the whole of it would be required to be paid at the time of the subscription. The contract does not say, however, that the installments should not be paid except as the purposes of the business might require it, and if it had so stated, the subscribers might have had a defense against the calls that were made by the trustees by showing that the sums called for were not in fact needed for the uses and purposes of the corporation. But this would import into the contract a condition which does not appear to be found there. The expression "for the purposes of the business" has no significance whatever, as it seems to us, because, in reality and in terms, not only was the contract made for the purposes of the business of the corporation alone, but the trustees themselves would not have any right to call for any sum except for the business of the corporation.

The counsel labors under the misapprehension of assuming that the subscription would be tantamount to a condition that the same was payable only according to the exigencies and requirements of the corporation, and that these were to be determined wholly by the board of trustees.

If we are right in this construction of the agreement, the evidence offered by the plaintiff touching the requirements of the business was incompetent and immaterial, and its rejection was not error. It would not be competent for the plaintiff to vary the terms of the contract by oral evidence showing the needs of the corporation, nor is there in the contract anything in the nature of a latent ambiguity which would justify a resort to any oral testimony of the character offered by the plaintiff and which was rejected by the trial court.

For these reasons we think the judgment should be affirmed, with costs.

BRADY, P. J., concurred.

DANIELS, J.:

To hold that the cause of action accrued before the subsequent payments were required to be made is not consistent with the agreement between the defendant and the company when he subscribed for the stock. And the case of *Scovill* v. *Thayer* (105 U. S., 143) is opposed to that conclusion. But the authorities cited in the opinion, as well as *Goshen Turnpike Company* v. *Hurtin* (9 Johns., 217), sustain the power of the court to disregard the terms on which the parties made the money payable, and to hold the contract to be one for the absolute payment of so much money at once. They are controlling, although they do violence to the agreement and annul the intention expressed in it. In compliance with their superior authority I agree to the affirmance of the judgment in this case.

Judgment affirmed, with costs.